Rick Lyon (Cal. Bar No. 229288)
rick@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAYNA CLARK, individually and on behalf of all others similarly situated, | Case No. 5:24-cv-04058 |
| *Plaintiff*, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| NORDIC NATURALS, INC., | |
| *Defendant*. | |

**Table of Contents**

I.      Introduction ................................................................................................. 2

II.     Parties ........................................................................................................... 3

III.    Jurisdiction and Venue. .............................................................................. 3

IV.     Facts. ............................................................................................................. 3

        A.      Fish oil capsules do not promote heart health. ............................... 3

        B.      Nordic Naturals sells over-the-counter fish oil capsules that purport to help
                "support a healthy heart." .................................................................... 5

        C.      Nordic Naturals' labeling is false and misleading to most customers. .......................... 6

        D.      Nordic Naturals' fish oil capsules are wholly worthless. ................ 7

        E.      Ms. Clark was misled and harmed by Nordic Naturals' misleading labeling. .............. 8

        F.      No adequate remedy at law. ............................................................... 9

V.      Class action allegations. ............................................................................. 9

VI.     Claims. ......................................................................................................... 11

        First Cause of Action: Violations of State Consumer Protection Acts ................... 11

        Second Cause of Action: Violation of California's False Advertising Law Bus. & Prof.
                Code §§ 17500 & 17501 et. seq. .................................................. 12

        Third Cause of Action: Violation of California's Consumer Legal Remedies Act ............. 13

        Fourth Cause of Action: Violation of California's Unfair Competition Law ................ 15

        Fifth Cause of Action: Breach of Express Warranty ................................ 17

        Sixth Cause of Action: Quasi-Contract .................................................... 18

        Seventh Cause of Action: Negligent Misrepresentation and Omission .................. 18

        Eighth Cause of Action: Intentional Misrepresentation and Omission ................ 19

VII.    Relief. .......................................................................................................... 20

VIII.   Demand for Jury Trial. ............................................................................... 21

1    **I.**      **Introduction**

2        1.      Fish oil is one of the most popular dietary supplements.  About 19 million Americans

3 take fish oil supplements, because they believe that the supplements will improve their

4 cardiovascular health by helping to support a healthy heart.

5        2.      Many of the roughly 19 million Americans who supplement their diets with fish oil do

6 so by taking fish oil capsules.  But fish oil capsules do not actually provide the heart health benefits

7 that they claim to.

8        3.      Taking fish oil capsules does not support heart health.  Overwhelming evidence

9 demonstrates that fish oil capsules do not promote a healthy heart.  Indeed, one way to determine

10 whether fish oil capsules promote a healthy heart is to conduct trials pitting these capsules against

11 placebos to see if there are any differences in heart-related benefits.  If there are no differences, this

12 shows that fish oil capsules do not support a healthy heart.  Such trials have been performed multiple

13 times.  And these "multiple randomized trials pitting fish oil against placebos show no evidence of

14 heart-related benefits from fish oil capsules."[1]

15        4.      In fact, the most recent study on fish oil supplements found that taking these products

16 can be harmful to heart health.

17        5.      Fish oil makers, however, continue to market these capsules as helping heart health.

18 Scientists and consumer health advocates have warned that fish oil labels are misleading, and that

19 consumers are wasting their money.[2]

20        6.      Defendant Nordic Naturals, Inc. ("Nordic Naturals" or "Defendant") makes, sells, and

21 markets Nordic Naturals brand fish oil capsules ("Nordic Naturals Fish Oil Capsules" or "Products").

22 Each bottle claims that the capsules support heart health.

23        7.      Like other consumers, Ms. Clark bought Nordic Naturals Fish Oil Capsules.  As

24 described below, the label on the Product purchased by Ms. Clark states "Omega-3 for cognition,

25 heart health, and immune support."  Ms. Clark read and relied on this statement that the Product

26 promotes heart health and would not have purchased the Product if she had known that the Product

27 does not promote—and can even harm—heart health.

28

---

[1] https://blogs.scientificamerican.com/observations/the-false-promise-of-fish-oil-capsules/
[2] https://www.health.harvard.edu/heart-health/the-false-promise-of-fish-oil-capsules

## II.     Parties

8.     Plaintiff Dayna Clark is domiciled in Los Angeles, California.

9.     The proposed class includes citizens of every state.

10.     Defendant Nordic Naturals, Inc. is a California corporation with its principal place of business at 111 Jennings Drive, Watsonville, CA 95076

## III.     Jurisdiction and Venue.

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

12.     The Court has personal jurisdiction over Defendant because Defendant sold Nordic Naturals Fish Oil Capsules to consumers in California, including to Plaintiff, and because Defendant is a California Corporation with its principal place of business in California.

13.     Venue is proper under 28 U.S.C. § 1391(b)(1) & (2), because Defendant resides in this District (at its Watsonville headquarters) and because a substantial part of Defendant's conduct giving rise to the claims occurred in this District.

## IV.     Facts.

### A.     Fish oil capsules do not promote heart health.

14.     Consumers take fish oil capsules because of their purported health benefits.  Harvard Medical School describes it as follows:

> Millions of Americans — including one in five people over age 60 — take fish oil supplements…. Who can blame them? After all, the product labels say things like "promotes heart health" and "supports healthy cholesterol and blood pressure levels."[3]

15.     The problem is, "there's no evidence that these amber capsules improve cardiovascular health—and they may even harm it."[4]  "Multiple randomized trials have compared fish oil supplements with placebo to look for cardiovascular benefit – and found nothing."[5]  "The

---

[3] https://www.health.harvard.edu/heart-health/the-false-promise-of-fish-oil-capsules
[4] *Id.*
[5] https://utswmed.org/medblog/fish-oil-pills-heart/; *see, e.g.*, https://www.nejm.org/doi/full/10.1056/nejmoa1811403; https://www.nejm.org/doi/full/10.1056/nejmoa1804989

bottom line is there is no proof fish oil capsules improve your heart health." [6]

16.    Worse, multiple recent studies have found that fish oil supplements are *harmful* to heart health.

17.    "In the [peer-reviewed[7]] REDUCE-IT trial, 8179 participants were given 'omega-3' and they found that "there was a significant increase in risk of AF [atrial fibrillation] with omega-3 fatty acids."[8]

18.    "In the VITAL Rhythm Study…12,542 participants were randomized to receive a standard dose of omega-3 fatty acids, 840 mg/d (a combination of EPA and DHA) and 12,557 to receive placebo. After a median of 5.3 years, the incidence of AF was 7.2 per 1000 person-years in those taking omega-3 fatty acids vs 6.6 per 1000 person-years in those taking placebo."[9]

19.    And a study of over 400,000 participants concluded that "[r]egular use of fish oil supplements might be a risk factor for atrial fibrillation and stroke among the general population."[10]

20.    Yet, because these supplements are advertised as promoting heart health despite overwhelming evidence to the contrary, and because companies omit the fact that taking these supplements could harm heart health, millions of Americans regularly buy fish oil capsules, believing that taking the capsules will improve or promote their heart health.

---

[6] *Id.*

[7] The REDUCE-IT study was published in the New England Journal of Medicine. *See* https://www.nejm.org/about-nejm/about-nejm ("NEJM delivers high-quality, peer-reviewed research").

[8] Gregory Curfman, MD, *Omega-3 Fatty Acids and Atrial Fibrillation* (March 16, 2021). This article appears in JAMA, a peer-reviewed network of medical journals. *See* https://jamanetwork.com/journals/jama/pages/for-authors ("JAMA, published continuously since 1883, is an international peer-reviewed general medical journal. JAMA is a member of the JAMA Network, a consortium of peer-reviewed, general medical and specialty publications.").

[9] Albert CM, Cook NR, Pester, et al.  *Effect of marine omega-3 fatty acid and vitamin D supplementation on incident atrial fibrillation: a randomized clinical trial* (*VITAL Rhythm*) (JAMA, March 16, 2021).

[10] Chen et al., *Regular use of fish oil supplements and course of cardiovascular diseases: prospective cohort study* (BMJMED, 2024).

1     **B.     Nordic Naturals sells over-the-counter fish oil capsules that purport to help**
2           **"support a healthy heart."**

3     21.     Nordic Naturals makes, markets, and sells Nordic Naturals fish oil supplements (the
4     "Nordic Naturals Fish Oil Capsules" or "Products") in the United States. The Products are available
5     nationwide.  Hundreds of thousands (or even millions) of U.S. consumers buy Nordic Naturals fish
6     oil capsules.

7     22.     Nordic Naturals makes and sells several varieties of Products, including the following
8     non-limiting examples: Nordic Naturals Ultimate Omega 1280 mg Omega-3, Ultimate Omega 2x
9     2150 mg Omega per 2 Soft Gels, Omega-3 690 mg Omega-3s per 2 Soft Gels, and Omega-3 1560
10    mg. Illustrative examples are shown below:





23.     Each product variant states that it supports heart health.  They do this by stating that the products are "for heart, brain, and immune health," "for cognition, heart health, and immune support," or similar phrases.

24.     Each of the Nordic Naturals Products are substantially similar.  They all advertise fish oil capsules and have a representation on the front of the bottle that the Product supports heart health.

**C.     Nordic Naturals' labeling is false and misleading to most customers.**

25.     By selling Products that purport to support heart health, Nordic Naturals is representing to customers that taking its fish oil capsule is beneficial to heart health.

26.     When a consumer picks up a bottle of Nordic Naturals Fish Oil Capsules, the consumer reasonably believes that taking the capsules will be beneficial to heart health.  No reasonable consumer reads the label and expects that the capsule has no effect on heart health. When the label says "for heart…health," consumers expect that to be accurate—that the product does help support a healthy heart. But the truth is, the product does not support heart health.  In this way, Nordic Naturals' affirmative representations are misleading to reasonable consumers.

27.     Also, because Nordic Naturals Fish Oil Capsules omit any warnings about the risks of fish oil supplements from their labels, no reasonable consumer would know from the labeling that taking fish oil supplements jeopardizes their heart health, including, for example, by increasing the risk of atrial fibrillation.

**D.     Nordic Naturals' fish oil capsules are wholly worthless.**

28.     The inaccurate labeling of Nordic Naturals Fish Oil Capsules is highly material to reasonable consumers.  The reason that consumers buy fish oil capsules is because they believe that they support heart health.  No reasonable consumer wants to buy and ingest a fish oil capsule that has no effect on heart health.

29.     Similarly, Nordic Naturals' false and misleading labeling drives the demand for its Fish Oil Capsules.  As explained above, the primary reason that people buy and ingest fish oil capsules is that they believe that it is beneficial to their heart.  If consumers knew the truth—that Nordic Naturals' Fish Oil Capsules do not have any benefit to heart health at all—the price of its products would crater.

30.     Worse, no consumer would pay the current market price for Nordic Naturals Fish Oil Capsules if Nordic Naturals did not omit information regarding the risks of fish oil supplements, specifically that they may be *harmful* to heart health by increasing the incidences of atrial fibrillation.

31.     The reason that consumers purchase Nordic Naturals Fish Oil Capsules is because they believe they promote heart health.  But without its heart benefits, and with the increased risk of atrial fibrillation, Nordic Naturals Fish Oil Capsules do not provide this benefit.  What reasonable person wants to pay for and ingest capsules at the current market price if the products do not improve heart health and, in fact, are harmful to heart health?   Thus, the economic injury here is the price

premium attributable to the false and misleading heart health statements.  Alternatively, because the false and misleading heart health statement is the sole reason that reasonable consumers purchase Nordic Naturals Fish Oil Capsules, the economic injury is the entire price of the Nordic Naturals Fish Oil Capsules that Plaintiff and the class members purchased.

**E.      Ms. Clark was misled and harmed by Nordic Naturals' misleading labeling.**

32.      In or around spring of 2022, Dayna Clark purchased Nordic Naturals Fish Oil Capsules from Amazon.

33.      She purchased the Product regularly for years. The package prominently states that it helps support heart health.  Ms. Clark read and relied on this statement when purchasing the Product. She would not have purchased the Product at the price she paid if she had known that the Products have not actually been shown to promote heart health.

34.      The reason that Ms. Clark bought the Products is because she believed that the Products were good for her heart.  She read and relied on the statement on the label that the Products supports heart health. She would not have purchased the Products at the price she paid, if she knew that the Products did not actually support heart health. In fact, knowing the truth, the Products are worthless to her. The economic injury she suffered is the entire purchase price she paid for the Product, as it is worthless.

35.      Moreover, Ms. Clark was unaware that fish oil supplements, such as Nordic Naturals Fish Oil Capsules, actually *increased* his risk of atrial fibrillation, meaning that the Products were actually *harmful* to heart health.  She never would have paid the price she paid for the Products had this information not been omitted from the labels.

36.      Plaintiff wants Nordic Naturals to fix its practices and sell capsules with accurate labeling.  If Nordic Naturals fixes its Products, so that the capsules actually do help support heart health, she would buy them again.  But given Nordic Naturals past deception, Plaintiff cannot rely on Nordic Naturals' word alone that it has fixed the problem.  Plaintiff faces an imminent threat of harm because she will not be able to rely on Nordic Naturals' labels in the future, and will not be able to buy Nordic Naturals' Fish Oil Capsules, even if Nordic Naturals claims to have fixed the issue. To buy Nordic Naturals' Products again, Plaintiff needs the Court to enter an order forbidding Nordic

1    Naturals from claiming that its capsules promote heart health unless the capsules actually promote

2    heart health.

3           **F.**    **No adequate remedy at law.**

4        37.    Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to

5    seek equitable remedies in the alternative because she has no adequate remedy at law.

6        38.    A legal remedy is not adequate if it is not as certain as an equitable remedy.  To obtain

7    a full refund as damages, Plaintiff must show that the products they received have essentially no

8    market value.  In contrast, Plaintiff can seek restitution without making this showing.  This is because

9    Plaintiff purchased products that she would not otherwise have purchased, but for Nordic Naturals'

10    misrepresentations.  Obtaining a full refund at law is less certain than obtaining a refund in equity.

11        39.    Also, winning damages under the CLRA requires additional showings not required

12    under the UCL and FAL.  For example, to obtain damages under the CLRA, Plaintiff must prove that

13    she complied with the CLRA's notice requirement.  No such requirements exist to obtain restitution.

14    In addition, the CLRA prohibits only particular categories of deceptive conduct.  By contrast, the

15    UCL broadly prohibits "unfair" conduct and is thus broader.

16        40.    By the same token, Plaintiff's common law claims require additional showings,

17    compared to her UCL, FAL, or unjust enrichment claims.  For example, to prevail on her breach of

18    warranty claim, Plaintiff needs to show that the statements they challenge constitute a warranty and

19    that the warranty was part of the basis of the bargain.  No such showings are required by the UCL or

20    FAL, or for an unjust enrichment theory.  In fact, the UCL and the FAL were enacted specifically to

21    create new claims and remedies not available at common law.  And unjust enrichment exists in part

22    because contractual claims are often more difficult to establish.  In this way, Plaintiff's UCL and

23    FAL claims, and Plaintiff's unjust enrichment claims, are more certain than her legal claims.

24        41.    Finally, the remedies at law available to Plaintiff are not equally prompt or otherwise

25    efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and

26    be more expensive, than a bench trial.

27    **V.**    **Class action allegations.**

28        42.    Plaintiff brings the asserted claims on behalf of the proposed class of:

- <u>Nationwide Class</u>: all persons who, within the applicable statute of limitations period, purchased one or more Nordic Naturals Fish Oil Capsules.
- <u>Consumer Protection Subclass</u>: all persons who, while in the states of California, Connecticut, Illinois, Maryland, Missouri or New York, and within the applicable statute of limitations period, purchased one or more Nordic Naturals Fish Oil Capsules.
- <u>California Subclass</u>: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Nordic Naturals Fish Oil Capsules.

43.     The following people are excluded from the class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity & Ascertainability***

44.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

45.     Class members can be identified through Defendant's sales records and public notice.

***Predominance of Common Questions***

46.     There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its labeling;

(2) whether Defendant violated consumer protection statutes;

(3) whether Defendant committed a breach of an express or implied warranty;

(4) damages needed to reasonably compensate Plaintiff and the proposed class.

*Typicality & Adequacy*

47.     Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased the Nordic Naturals Fish Oil Capsules.  There are no conflicts of interest between Plaintiff and the class.

*Superiority*

48.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VI.    Claims.**

**First Cause of Action:**

**Violations of State Consumer Protection Acts**

**(on behalf of all Plaintiff and the Multi-State Consumer Protection Subclass)**

49.     Plaintiff incorporates each and every factual allegation set forth above.

50.     As alleged below, Plaintiff brings individual and subclass claims based on California law.  For the Multi-State Consumer Protection Subclass, Plaintiff brings this count for violations of state consumer protection laws that are materially-similar to the laws of California, including:

| State | Statute |
|---|---|
| California | Cal. Bus. & Prof. Code § 17200, and the following; *Id.* §17500, and the following; Cal. Civ. Code §1750 and the following. |
| Connecticut | Conn. Gen Stat. Ann. § 42- 110, and the following. |
| Illinois | 815 ILCS § 501/1, and the following. |
| Maryland | Md. Code Ann. Com. Law, § 13-301, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| New York | N.Y. Gen. Bus. Law § 349, and the following. |

51.     Each of these statutes is materially similar.  Each broadly prohibits deceptive conduct in connection with the sale of goods to consumers.  No state requires individualized reliance, or proof of defendant's knowledge or intent.  Instead, it is sufficient that the deceptive conduct is misleading to reasonable consumers and that the conduct proximately caused harm.

52.     As alleged in detail above, Defendant's misrepresentations and omissions are misleading to reasonable consumers in a material way.  Defendant's false and misleading labeling was a substantial factor in Plaintiff's purchase decisions and the purchase decisions of class members.

53.     Defendant's misrepresentations and omissions were willful and knowing. Defendant falsely represented that Nordic Naturals Fish Oil Capsules support heart health.  Moreover, Defendant omitted crucial information from its label, failing to disclose that fish oil supplements may increase the risk of atrial fibrillation and *harm* heart health.

54.     Because Defendant makes and sells the Products, Defendant knew, or should have known through the exercise of reasonable care, that these statements were false and misleading. Furthermore, Defendant controls its labeling, knowingly put on the "Heart Health" representations, and knows the plain meaning of "Heart Health."

55.     Defendant had superior knowledge of its Products compared to consumers, and Defendant knew or should have known about the dangerous risks associated with its Products, namely that they increase the risk of atrial fibrillation and harm heart health. Defendant had a duty to warn consumers about the risks of its Products.

56.     Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Nordic Naturals Fish Oil Capsules if they had known that the Products have not actually been shown to improve cardiovascular outcomes or promote heart health or (b) they received products that were, in truth, worthless.

**Second Cause of Action:**

**Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq.**

**(By Plaintiff and the California Subclass)**

57.     Plaintiff incorporates each and every factual allegation set forth above.

58.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

59.    Defendant has violated Sections 17500 and 17501 of the Business and Professions Code.

60.    Defendant has violated, and continues to violate, Section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and subclass members.

61.    As alleged more fully above, Defendant falsely advertised its products by falsely representing that Nordic Naturals Fish Oil Capsules support heart health.

62.    Moreover, Defendant omitted crucial information from its label, failing to disclose that fish oil supplements may increase the risk of atrial fibrillation and *harm* heart health.

63.    Defendant's misrepresentations and omissions were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Products.  In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

64.    Defendant's misrepresentations and omission were a substantial factor in Plaintiff's purchase decision and the purchase decision of subclass members.

65.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Nordic Naturals Fish Oil Capsules if they had known that the Products do not actually promote heart health, and (b) they received products that were, in truth, worthless.

### **Third Cause of Action:**

### **Violation of California's Consumer Legal Remedies Act**

### **(by Plaintiff and the California Subclass)**

66.    Plaintiff incorporates each and every factual allegation set forth above.

67.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

68.    Plaintiff and the subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

69.    Plaintiff and the subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

70.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

71.    As alleged more fully above, Defendant has violated the CLRA by falsely representing that Nordic Naturals Fish Oil Capsules support heart health.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were false and misleading.

72.    Moreover, Defendant omitted crucial information from its label, failing to disclose that fish oil supplements may increase the risk of atrial fibrillation and *harm* heart health.

73.    Defendant violated, and continues to violate, section 1770 of the California Civil Code.

74.    Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have.  Defendant represents that its Products have the characteristic of supporting heart health, when in reality they do not.

75.    Defendant violated, and continues to violate, section 1770(a)(7) of the California Civil Code by representing that Products offered for sale are of a particular standard, quality, or grade, if they are another.  Defendant represents that its Products meet the standard of supporting heart health, when in reality they do not.

76.    And Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code.  Defendant violated this by advertising its Products as being fit for their intended purpose of supporting heart health, when in fact Defendant does not intend to sell the Products as advertised.

77.     Defendant's false labeling was likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

78.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Products.  In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

79.     Defendant's misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decision of subclass members.

80.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Nordic Naturals Fish Oil Capsules if they had known that the Products do not actually promote heart health, and (b) they received products that were, in truth, worthless.

81.     Accordingly, pursuant to California Civil Code § 1780(a)(2), Ms. Clark, on behalf of herself and all other members of the subclass, seeks injunctive relief.

82.     CLRA § 1782 NOTICE.  On June 12, 2024, a CLRA demand letter was sent to Defendant's California registered agent and California headquarters via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  If Defendant does not fully correct the problem for Plaintiff and for each member of the California Subclass within 30 days of receipt, Plaintiff and the California Subclass will seek all monetary relief allowed under the CLRA.

83.     A CLRA venue declaration is attached.

### Fourth Cause of Action:

### Violation of California's Unfair Competition Law

### (by Plaintiff and the California Subclass)

84.     Plaintiff incorporates each and every factual allegation set forth above.

85.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

86.    Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

87.    Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.

88.    In addition, Nordic Naturals engaged in unlawful conduct by violating California Health & Safety Code § 109875 et seq. (the Sherman Food Drug and Cosmetic Law) which adopts and parallels federal FDCA requirements, including prohibitions on false and misleading labeling.

***The Fraudulent Prong***

89.    As alleged in detail above, Defendant's representations that its Products promote heart health, or that its Products improve cardiovascular outcomes, were false and misleading. Moreover, its omission of information regarding the heart risks associated with taking its Products were false and misleading. Its labeling is likely to deceive, and did deceive, Plaintiff and other reasonable consumers.

***The Unfair Prong***

90.    Defendant's conduct, as detailed above, also violated the "unfair" prong of the UCL.

91.    Defendant's conduct caused substantial injury to Plaintiff and subclass members. The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendant's conduct (which is none). Inaccurately labeled fish oil capsules have no public utility. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading labels only injure healthy competition and harm consumers.

92.    Plaintiff and the subclass could not have reasonably avoided this injury.  As alleged above, Defendant's labeling is false and misleading. Its labeling is likely to deceive, and did deceive reasonable consumers like Plaintiff.

93.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

94.     Defendant's conduct violated the public policy against false and misleading labels, which is tethered to the CLRA and the FAL, as well as California's Sherman Act.

* * *

95.     For all prongs, Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Products.  In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

96.     Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decision of subclass members.

97.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Nordic Naturals Fish Oil Capsules if they had known that the Products do not actually promote heart health, and (b) they received products that were, in truth, worthless.

**Fifth Cause of Action:**

**Breach of Express Warranty**

**(by Plaintiff and the Nationwide Class)**

98.     Plaintiff incorporates each and every factual allegation set forth above.

99.     Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this claim under California law for herself and members of the California Subclass.

100.    Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Nordic Naturals Fish Oil Capsules, issued material, written warranties by representing that the Products help support a healthy heart.  This was an affirmation of fact about the Products (i.e., a description of the capsules) and a promise relating to the goods.

101.    This warranty was part of the basis of the bargain and Plaintiff and class members relied on this warranty.

102.    In fact, the Nordic Naturals Fish Oil Capsules do not conform to the above-referenced representation because, as alleged in detail above, Nordic Naturals' labeling is inaccurate and the Products have not been shown to support a healthy heart.  They do not promote heart health.  Thus, the warranty was breached.

103.    Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on June 12, 2024.

104.    Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing harm, because: (a) they would not have purchased Nordic Naturals Fish Oil Capsules if they had known that the Products have not actually been shown to improve cardiovascular outcomes or promote heart health or (b) they received products that were, in truth, worthless.

**Sixth Cause of Action:**

**Quasi-Contract**

**(by Plaintiff and the Nationwide Class)**

105.    Plaintiff incorporates each and every factual allegation set forth above.

106.    Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. Common law quasi-contract claims are materially similar in all fifty states. Plaintiff brings this cause of action in the alternative to her Breach of Express Warranty claim (Fifth Cause of Action) on behalf of herself and the Nationwide Class.  In the alternative, Plaintiff brings this claim under California law on behalf of herself and the California Subclass.

107.    As alleged in detail above, Defendant's false and misleading representations caused Plaintiff and the class to purchase wholly worthless Products.

108.    In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

109.    Plaintiff and the class seek restitution, and in the alternative, rescission.

**Seventh Cause of Action:**

**Negligent Misrepresentation and Omission**

**(by Plaintiff and the Nationwide Class)**

110.    Plaintiff incorporates each and every factual allegation set forth above.

111.    Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this claim under California law for herself and members of the California Subclass.

112.    As alleged more fully above, Defendant made false representations to Plaintiff and class members concerning its statements that the capsules support a healthy heart.

113.    Defendant also omitted crucial information from its label, failing to disclose that fish oil supplements may increase the risk of atrial fibrillation and *harm* heart health.

114.    These representations were false.

115.    When Defendant made these misrepresentations and omissions, it knew or should have known that the representations were false.  Defendant had no reasonable grounds for believing that these representations were true when made.

116.    Defendant intended that Plaintiff and class members rely on these representations and omissions.

117.    In deciding to purchase Products from Defendant, Plaintiff and the class reasonably relied on Defendant's representations and omissions to form the mistaken belief that the Products did promote heart health.

118.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Nordic Naturals Fish Oil Capsules.

119.    Defendant's misrepresentations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

120.    Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Nordic Naturals Fish Oil Capsules if they had known that the Products do not actually promote heart health, and (b) they received products that were, in truth, worthless.

**Eighth Cause of Action:**

**Intentional Misrepresentation and Omission**

**(by Plaintiff and the California Subclass)**

121.   Plaintiff incorporates each and every factual allegation set forth above.

122.   Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

123.   As alleged more fully above, Defendant made false representations to Plaintiff and class members concerning its statements that the capsules support a healthy heart.

124.   Defendant omitted crucial information from its label, failing to disclose that fish oil supplements may increase the risk of atrial fibrillation and *harm* heart health.

125.   When Defendant made these misrepresentations and omissions, it knew that at the time that it made them that the representations were false and/or acted recklessly in making the misrepresentations and omissions.

126.   Defendant intended that Plaintiff and class members rely on these representations and omissions and Plaintiff and subclass members read and reasonably relied on them.

127.   In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

128.   Defendant's misrepresentations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

129.   Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Nordic Naturals Fish Oil Capsules if they had known that the Products do not actually promote heart health and (b) they received products that were, in truth, worthless.

**VII.   Relief.**

130.   Plaintiff seeks the following relief for herself and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Rescission;

- Disgorgement, and other just equitable relief;

- Pre- and post-judgment interest;

- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law;

- Any additional relief that the Court deems reasonable and just.

**VIII.  Demand for Jury Trial.**

131.    Plaintiff demands the right to a jury trial on all claims so triable.

Dated: July 3, 2024                                   Respectfully submitted,

                                                      By: /s/ *Richard Lyon*
                                                      Rick Lyon (Cal. Bar No. 229288)
                                                      rick@dovel.com
                                                      Simon Franzini (Cal. Bar No. 287631)
                                                      simon@dovel.com
                                                      DOVEL & LUNER, LLP
                                                      201 Santa Monica Blvd., Suite 600
                                                      Santa Monica, California 90401
                                                      Telephone: (310) 656-7066
                                                      Facsimile: (310) 656-7069

                                                      Zachary Arbitman*
                                                      George A. Donnelly*
                                                      FELDMAN SHEPHERD WOHLGELERNTER
                                                      TANNER WEINSTOCK & DODIG, LLP
                                                      1845 Walnut Street, 21st Floor
                                                      Philadelphia, PA 19103
                                                      T: (215) 567-8300
                                                      F: (215) 567-8333

                                                      *Pro Hac Vice forthcoming

                                                      *Attorneys for Plaintiff*