1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7

8    DAYNA CLARK,                              Case No. 24-cv-04058-EKL

              Plaintiff,
9
                                              **ORDER GRANTING IN PART AND**
       v.                                     **DENYING IN PART DEFENDANT'S**
10                                            **MOTION TO DISMISS**

11   NORDIC NATURALS, INC.,                    Re: Dkt. No. 27

              Defendant.
12

13

14         This false advertising action arises out of Plaintiff's purchase of Defendant's omega-3 fish

15   oil supplements and her allegations that the product labels are false and misleading.  Before the

16   Court is Defendant's motion to dismiss.  Mot. to Dismiss, ECF No. 27 ("Mot.").  The Court

17   carefully reviewed the parties' briefs and heard argument on February 5, 2025.  For the following

18   reasons, Defendant's motion to dismiss is GRANTED as to Count 1 (various state consumer

19   protection acts) and Count 3 (California Consumer Legal Remedies Act).  Defendant's motion to

20   dismiss is DENIED as to Count 2 (California False Advertising Law), Count 4 (California Unfair

21   Competition Law), Count 5 (express warranty), Count 6 (quasi-contract), Count 7 (negligent

22   misrepresentation), and Count 8 (intentional misrepresentation and omission).[1]

23   **I.    LEGAL STANDARDS**

24         Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails

25   to state a claim upon which relief can be granted.  To avoid dismissal, the plaintiff must allege

26   "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

27

28   _____
[1] The Court assumes the parties' familiarity with the facts of this case, which are discussed below
as relevant to the Court's rulings.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    550 U.S. 544, 570 (2007).  A claim is facially plausible when the pleaded facts allow the court "to

2    draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

3    *Iqbal*, 556 U.S. 662, 678 (2009).  For purposes of a Rule 12(b)(6) motion, the court generally

4    "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light

5    most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

6    1025, 1031 (9th Cir. 2008).  However, the court need not "assume the truth of legal conclusions

7    merely because they are cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061,

8    1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.

9    1981)).  If the court finds that dismissal pursuant to Rule 12(b)(6) is warranted, the "court should

10   grant leave to amend even if no request to amend the pleading was made, unless it determines that

11   the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203

12   F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th

13   Cir. 1995)).

14          Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a complaint if the

15   court lacks subject matter jurisdiction.  Plaintiff must demonstrate Article III standing for each

16   claim and for each form of relief sought.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31

17   (2021).  This requirement applies "regardless of whether the plaintiff sues individually or as a

18   class representative."  *See B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 967 (9th Cir. 2019).

19   Additionally, where the plaintiff seeks injunctive relief, she must demonstrate that she faces "a

20   substantial risk of future injury."  *Murthy v. Missouri*, 603 U.S. 43, 68 (2024).

21   **II.     REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE**

22          Both parties ask the Court to consider extrinsic documents in ruling on Defendant's motion

23   to dismiss.  *See* Def.'s Req. for Judicial Notice, ECF No. 29 ("Def.'s RJN"); McDonald Decl.

24   (attaching exhibits referenced in Def.'s RJN), ECF No. 28; Donnelly Decl., ECF No. 34-1.  Both

25   Defendant's and Plaintiff's requests are GRANTED in part and DENIED in part as follows.

26          The Court will consider Defendant's Exhibits 1 through 7 because they are incorporated by

27   reference in the complaint.  McDonald Decl. Exs. 1-7.  Plaintiff "refers extensively to the[se]

28   document[s]" in the complaint and they "form the basis" of her claims.  *See Khoja v. Orexigen*

2

1      *Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  Plaintiff does not oppose the request.

2              With respect to Defendant's Exhibits 8, 9, 11, 12, and 13, these documents are subject to

3      judicial notice because they are matters of public record made available on government websites.

4      *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *Hadley v. Kellogg Sales Co.*,

5      243 F. Supp. 3d 1074, 1088 (N.D. Cal. 2017) ("*Hadley I*").  However, the Court will not take

6      judicial notice of facts within these documents that are subject to reasonable dispute.  *See Lee*, 250

7      F.3d at 689 ("A court may take judicial notice of matters of public record. . . . But a court may not

8      take judicial notice of a fact that is subject to reasonable dispute.").  Here, Defendant cites these

9      exhibits for the truth of the facts therein to dispute the sufficiency of Plaintiff's factual allegations.

10     Judicial notice for this purpose is improper at the pleading stage.  *Khoja*, 899 F.3d at 998-99

11     ("[U]se of extrinsic documents to resolve competing theories against the complaint risks

12     premature dismissals of plausible claims that may turn out to be valid after discovery.").

13             The Court will not consider Defendant's Exhibit 10 because it is an unsigned, undated

14     copy of a letter sent to an organization that is not party to this case.  McDonald Decl. Ex. 10.  This

15     document does not satisfy the requirements for judicial notice.  *See* Fed. R. Evid. 201(b)(2)

16     (limiting judicial notice to facts that "can be accurately and readily determined from sources

17     whose accuracy cannot be reasonably be questioned").

18             Turning to Plaintiff's exhibits, the Court will consider Plaintiff's Exhibits 2, 4, 5, and 6.

19     These exhibits are incorporated by reference because they are identical copies of Defendant's

20     Exhibits 4, 5, 6, and 7, discussed above.  *See* Donnelly Decl. Exs. 2, 4-6.  Plaintiff's Exhibits 1

21     and 7 are likewise incorporated by reference into the complaint.  *Id.* Exs. 1, 7.  However, the Court

22     will not consider Plaintiff's Exhibits 3, 8, and 9.  *See* Donnelly Decl. Exs. 3, 8-9.  Plaintiff did not

23     provide any basis for taking judicial notice of these exhibits, and they are not incorporated by

24     reference.

25     **III.    DISCUSSION**

26             Defendant Nordic Naturals, Inc. ("Defendant") makes, markets, and sells omega-3 fish oil

27     supplements (the "Products") in the United States.  Compl. ¶ 21, ECF No. 1.  Plaintiff alleges that

28     Defendant's Products are all "substantially similar" and that their labels make representations such

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    as "for heart, brain, and immune health," "for cognition, heart health, and immune support," or

2    other similar phrases. *Id.* ¶¶ 23-24.

3    　　　　At issue in the instant case are the "heart health" claims on Defendant's Products. Plaintiff

4    alleges that the "heart health" claims are false and misleading because omega-3 fish oil

5    supplements, including Defendant's Products, are actually harmful to heart health.[2]  Compl. ¶¶ 16-

6    19; *see also* McDonald Decl. Exs. 4-7.  In support of this theory, Plaintiff specifically alleges that

7    omega-3 supplements have been linked to an *increased risk* of cardiovascular incident of atrial

8    fibrillation among the general population.  Compl. ¶ 19.

9    　　　　The Court first addresses whether Plaintiff's claims are preempted by the Food, Drug, and

10   Cosmetic Act ("FDCA").  Finding that Plaintiff's claims are not preempted, the Court then

11   considers whether Plaintiff has plausibly stated a claim as to each count of the complaint.

12   ### A.　　FDCA Preemption

13   　　　　Defendant contends that all of Plaintiff's claims are preempted by the FDCA because

14   Plaintiff seeks to impose liability on Defendant for making so-called "structure or function" claims

15   that are permitted by the FDCA.  Mot. at 1, 5-14.  In general terms, a "structure or function" claim

16   "describes the role of a nutrient or dietary ingredient intended to affect" the normal structure or

17   function of the human body or "characterizes the documented mechanism by which a nutrient or

18   dietary ingredient acts to maintain such structure or function."  21 U.S.C. § 343(r)(6).  The parties

19   agree that the "heart health" label claims on Defendant's Products are "structure or function"

20   claims.  Mot. at 5; Opp. at 3, ECF No. 34.

21   　　　　The FDCA provides that "structure or function" claims can be made for a dietary

22   supplement "if the manufacturer of the dietary supplement has substantiation that such statement

23   is truthful and not misleading."  21 U.S.C. § 343(r)(6).  The FDCA expressly "preempts state-law

24   requirements for claims about dietary supplements that differ from the FDCA's requirements."

25

---

26   [2] Plaintiff also alleges that omega-3 fish oil supplements have "no effect on heart health" and
therefore they "do[] not support a healthy heart," directly contradicting the representations on

27   Defendant's Products. Compl. ¶ 26; *see also id.* ¶¶ 1, 3, 6. For the reasons discussed below, the
Court finds that Plaintiff adequately alleges her "harmful to heart health" theory. Accordingly, the

28   Court need not reach Plaintiff's alternate theory that the Product labels are false and misleading
because omega-3 fish oil supplements have "no effect" on heart health.

1    *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 808 (9th Cir. 2020) (quoting *Dachauer v. NBTY,*

2    *Inc.*, 913 F.3d 844, 848 (9th Cir. 2019)).  However, the FDCA does not preempt plaintiffs from

3    challenging structure or function claims where plaintiffs plausibly allege that the claim is false or

4    misleading.  *Kroessler*, 977 F.3d at 814.

5             To avoid FDCA preemption, Plaintiff must "match" her evidence of falsity to the at-issue

6    structure or function claims.  *Kroessler*, 977 F.3d at 814.  The purpose of this requirement is to

7    avoid imposing obligations on manufacturers that are inconsistent with the FDCA's substantiation

8    requirements for structure or function claims.  For example, when a manufacturer claims only that

9    a supplement promotes heart *health*, a plaintiff may not dispute that claim "by citing studies

10   showing that the supplement [does] not prevent heart *disease*."  *Id*. at 812.  If that claim were

11   allowed to proceed, it would force the manufacturer "to substantiate that the supplement also

12   prevented heart disease" – even though the manufacturer did not make that claim – which exceeds

13   the burden of proof imposed by the FDCA for structure or function claims.  *Id*.  Thus, plaintiffs

14   may not challenge a structure or function claim based on evidence that the product does not *treat*,

15   *prevent*, or *reduce* incident of disease.  *See Dachauer*, 913 F.3d at 848,849.  Likewise, plaintiffs

16   may not challenge structure or function claims on the basis that the product is neutral or useless at

17   *reducing* disease.[3]  *Id.* (dismissing claim at summary judgment because "the record lack[ed]

18   evidence that vitamin E supplements are actually harmful, as opposed to simply useless at

19   reducing all-cause mortality (which they do not claim to reduce)").

20            However, plaintiffs are not categorically barred from relying on "disease studies" or

21   "incident of disease" to challenge structure or function claims.  Plaintiffs may rely on incident of

22   disease or mortality to challenge a structure or function claim where they affirmatively cite to

23

24   _____

     [3] Alternatively, plaintiffs may "match" their evidence by pointing to studies that support the

25   conclusion that the nutrient or dietary ingredient at-issue has "no effect" on the relevant structure
     or function in humans.  For example, in *Kroessler*, the plaintiff "matched" his evidence that

26   glucosamine did not "maintain or support joint health" by alleging that "the contents of the studies
     [relied on in the complaint] support the conclusion that glucosamine is 'ineffective' at 'supporting,

27   maintaining, or benefitting the health of human joints.'"  *Kroessler*, 977 F.3d at 813 (denying
     motion to dismiss on preemption grounds).  Here, the Court need not address Plaintiff's

28   allegations under this theory because Plaintiff plausibly alleges that Defendant's Products are
     harmful to heart health.

United States District Court
Northern District of California

evidence that the product is *harmful* or *increases* risk of disease or medical incident. *Dachauer*, 913 F.3d at 849 ("Conceivably, evidence that a supplement endangered users by increasing their risk of death could prove that a structure/function claim that omitted the risk was misleading."); *Kroessler*, 977 F.3d at 810 (reaffirming that FDCA does not preempt an allegation that a supplement increased risk of all-cause mortality). Challenging a structure or function claim on the basis that a supplement is *harmful* or *increases* the risk of disease is consistent with the FDCA's requirement that manufacturers substantiate that their structure or function claims are truthful and not misleading. *See id*. at 811-12. Such a claim is not preempted because a manufacturer's "fail[ure] to disclose the harmful aspects of the nutrient's structure/function" is misleading. *See Dachauer*, 913 F.3d at 848.

Two leading Ninth Circuit cases illustrate these principles. In *Dachauer*, the plaintiff alleged that vitamin E supplement labels claiming to "support cardiovascular health" and "promote[] immune function" were false or misleading because (1) the supplements do not prevent cardiovascular disease, and (2) the supplements might increase risk of all-cause mortality. 913 F.3d at 844, 846. The Ninth Circuit held that the FDCA preempted plaintiff's claims "to the extent that [plaintiff] argues that Defendants' structure/function claims are false or misleading because their supplements do not prevent cardiovascular disease." *Id.* at 848. The Ninth Circuit explained that "[t]he FDA allows manufacturers of supplements to make general claims – such as 'promotes heart health' – and to substantiate them with evidence that a supplement has some structural or functional effect on a given part of the human body," but manufacturers "need not also have evidence that those structural or functional effects reduce the risk of developing a certain disease." *Id*. By contrast, and relevant to the allegations here, the Ninth Circuit held that the FDCA did not preempt the plaintiff's claim to the extent that he alleged that the supplements "*increase* the risk of all-cause mortality." *Id.* But, in *Dachauer*, that claim failed for lack of proof at the summary judgment stage. *Id.* at 850.

In *Kroessler*, the Ninth Circuit reaffirmed its holding in *Dachauer* that "plaintiffs can challenge defendants' substantiation by pointing to 'matching evidence' contradicting those claims." 977 F.3d at 812. The Ninth Circuit explained that *Dachauer* dealt with a "mismatch" of

United States District Court
Northern District of California

United States District Court
Northern District of California

1   evidence because "the plaintiff attempted to dispute the defendant's substantiation that the

2   supplement promoted heart *health* by citing studies showing that the supplement did not prevent

3   heart *disease."  Id.*  The Court also noted that "[t]he quality of the evidence in the record . . . was

4   crucial to [its] holding in *Dachauer*" because *Dachauer* "was an appeal from a grant of summary

5   judgment."  *Id.* at 813.  The Court explained, "[t]his court in *Dachauer*, and many other courts,

6   have permitted state-law claims for false advertising to proceed well past the pleading stage. . . .

7   [E]videntiary analysis is not appropriate at the early procedural stage presented in this case."  *Id.* at

8   813-14.  Thus, considering *Dachauer* and *Kroessler* together, the crux of the Court's analysis

9   turns on whether Plaintiff has plead sufficient facts to support her allegation that omega-3 fish oil

10  supplements are harmful to heart health under Rule 12(b)(6) and the *Twombly/Iqbal* pleading

11  standard.

12          Applying these principles here, Plaintiff plausibly alleges that a "reasonable consumer

13  would not expect to suffer an increased risk of [cardiovascular incident]" from taking a product

14  that claims to be for "heart health."  *Dachauer*, 913 F.3d at 849.  Here, Plaintiff specifically

15  alleges that omega-3 supplements have been linked to an *increased risk* of cardiovascular incident

16  of atrial fibrillation among the general population.  Compl. ¶ 19.  This allegation is supported by a

17  peer-reviewed study (the "Chen study"), which included over 400,000 participants.  *See*

18  McDonald Decl. Ex. 7.

19          As to the relevance of the Chen study, Defendant asks the Court to follow *Magpayo v.*

20  *Walmart*, Case No. 24-cv-01350-WHO, 2024 WL 4529343 (N.D. Cal. Oct. 18, 2024).  In

21  *Magpayo*, the court granted defendant's motion to dismiss explaining that the studies relied on by

22  Plaintiff were insufficient to support Plaintiff's allegation that the "heart health" structure/function

23  claims were false because Plaintiff relied on studies involving "unspecified or expressly identified

24  'high doses'" of omega-3 fatty acids.  *Magpayo*, 2025 WL 754065, at *4.  Specifically, the court

25  ruled that Plaintiff "failed to allege and cite evidence in support that taking omega-3 fish oil

26  supplements *at the level the Products recommend* increases the risk of atrial fibrillation."  *Id.*

27  (concluding that the Chen study at issue in the instant case was insufficient to support plaintiff's

28  allegations because it did not track omega-3 dosage of participants).  The court's conclusion is

7

1    consistent with the general principle that allegations of an *increased risk of atrial fibrillation* are

2    not preempted by the FDCA if accompanied by sufficient support.

3    This Court, however, concludes that Plaintiff's reliance on the Chen study, which involved

4    over 400,000 participants with follow-up spanning up to fifteen years in some cases, is sufficient

5    at the motion to dismiss stage. *See* McDonald Decl. Ex. 7. Although the study did not track the

6    dosage of participants, it cannot be said at this early stage that the study's conclusion that

7    "[r]egular use of fish oil supplements might be a risk factor for atrial fibrillation and stroke among

8    the general population" has no bearing on Plaintiff's allegations. Indeed, it very well may be the

9    case that the majority of participants took a standard dose of omega-3 fish oil. The Defendant can

10    attack the sufficiency of Plaintiff's evidence at summary judgment or trial, and may very well

11    succeed, but that is for another day. The Court finds that Plaintiff has satisfied the pleading

12    standard articulated in *Dachauer* and *Kroessler*. She has alleged and cited scientific research that

13    Defendant's product may be harmful to the general public such that the product's "heart health"

14    claim is plausibly false or misleading. To conclude that the Chen study is not relevant for

15    purposes of a motion to dismiss would "impose[] a more demanding pleading standard than is

16    warranted under Rule 12(b)(6)." *Hamzeh v. Pharmavite*, Case No. 24-cv-00472-HSG, 2025 WL

17    621891 (N.D. Cal. Feb. 26, 2025); *Gallagher v. Bayer AG*, No. 14-CV-04601-WHO, 2015 WL

18    4932292, at *6 (N.D. Cal. Aug. 18, 2015).

19    **B.    Multi-State Consumer Protection Claims (Count 1)**

20    The Court GRANTS the motion to dismiss with leave to amend as to the multi-state

21    consumer protection acts outside of California (Count 1). Plaintiff is a California resident.

22    Compl. ¶ 6. The complaint does not allege that Plaintiff purchased Defendant's Products or was

23    otherwise harmed by Defendant in any other state. *See id*. ¶¶ 32-36. Moreover, there are no class

24    representatives from any of the other states identified in Count 1. Accordingly, Plaintiff does not

25    have standing to bring claims under Connecticut, Illinois, Maryland, Missouri, and New York

26    consumer protection acts. *See Jones v. Micron Tech., Inc.*, 400 F. Supp. 3d 897, 909-11 (N.D.

27    Cal. 2019) ("Plaintiffs must show they have standing for each claim they raise, and Plaintiffs do

28    not have standing to bring claims under the laws of states where they have alleged no injury,

United States District Court
Northern District of California

8

1    residence, or other pertinent connection.") (collecting cases); *see also Snyder*, 922 F.3d at 967.

2    Plaintiff informed the Court at the motion hearing that it is "not going to restate the multistate

3    consumer subclass under the statutory protection issues in any amended complaint."  4/23/25 Hr'g

4    Tr. 26:6-9, ECF No. 55.  The Court grants leave to amend for Plaintiff to allege additional facts or

5    to name additional plaintiffs who may have standing to bring these claims.

6              **C.    California Causes of Action**
                    **1.    False Advertising Law (Count 2), Unfair Competition Law (Count 4),**
7                   **and Breach of Express Warranty (Count 5)**

8              The Court DENIES the motion to dismiss the False Advertising Law ("FAL") (Count 2),

9    Unfair Competition Law ("UCL") (Count 4), and breach of express warranty (Count 5) claims.

10   Because Plaintiff plausibly alleges that the Product labels are false and misleading, Plaintiff also

11   states a claim under the UCL and FAL.  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th

12   Cir. 2008).  Likewise, courts in this district regularly hold that stating a claim under the California

13   consumer protection statutes is sufficient to state a claim for breach of express warranty.  *Hadley*

14   *v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1095 (N.D. Cal. 2017) ("*Hadley II*") (collecting cases

15   and declining to dismiss breach of express warranty claims where plaintiff plausibly alleged

16   "healthy heart" label is false or misleading).

17              **2.    California Consumer Legal Remedies Act (Count 3)**

18             The Court GRANTS the motion to dismiss with leave to amend as to violation of the

19   California Consumer Legal Remedies Act ("CLRA") (Count 3) because Plaintiff has not plausibly

20   alleged standing for any form of relief available under the CLRA.[4]

21             First, Plaintiff has not plausibly alleged Article III standing to seek injunctive relief.

22   Plaintiff must demonstrate Article III standing for each claim and for each form of relief sought.

23   *TransUnion*, 594 U.S. at 430-31.  To have standing for injunctive relief, Plaintiff must

24   demonstrate "a substantial risk of future injury."  *Murthy*, 603 U.S. at 68.  Plaintiff has not alleged

25   a sufficient likelihood of future injury because she alleges that the product is harmful to human

26   _____

27   [4] Because Plaintiff plausibly alleges that the Products labels are false and misleading, Plaintiff has
     also stated a claim under the CLRA.  *Williams*, 552 F.3d at 938 (explaining that false or
28   misleading advertising violates all three California consumer protection laws*, i.e.,* UCL, CLRA,
     and FAL).  However, the Court grants the motion to dismiss because of the standing issue.

1    health, and thus she is not likely to purchase the product in the future.  Compl. ¶ 31.

2         Second, Plaintiff has not sought monetary damages under the CLRA.  Plaintiff alleges that

3    she sent a "CLRA demand letter" on June 12, 2024, and that Plaintiff would seek monetary

4    damages under the CLRA if Defendant failed to "correct the unlawful, unfair, false and/or

5    deceptive practices alleged."  Compl. ¶ 82.  Plaintiff did not amend her complaint following the

6    thirty-day waiting period.  Cal. Civ. Code § 1782; *Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp.

7    3d 718, 730 (N.D. Cal. 2024) ("The CLRA provides that a plaintiff may file an action for

8    injunctive relief and, at least 30 days after filing that action and notifying the defendant of the

9    alleged violation, amend their complaint to include a request for damages.").  Accordingly, as

10   pled, Plaintiff has not brought a cause of action for monetary damages.

### 3.    Quasi-Contract (Count 6)

12        The Court DENIES the motion to dismiss the quasi-contract claim (Count 6).[5]  At the

13   pleading stage, Plaintiff may alternatively allege both a breach of express warranty claim and a

14   quasi-contract claim.  Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a

15   claim or defense alternatively or hypothetically, either in a single count or defense or in separate

16   ones."); *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015) ("To

17   the extent the district court concluded that the [quasi-contract] cause of action was nonsensical

18   because it was duplicative of . . . other claims, this is not grounds for dismissal.").  To state a

19   quasi-contract claim, plaintiff must allege "that a defendant has been unjustly conferred a benefit

20   through mistake, fraud, coercion, or request."  *Liou v. Organifi, LLC*, 491 F. Supp. 3d 740, 752

21   (S.D. Cal. 2020) (citing *Astiana*, 783 F.3d at 762).  Here, Plaintiff alleges that "Defendant's false

22   and misleading representations caused Plaintiff and the class to purchase wholly worthless

23   Products" and thus "Defendant received a direct and unjust benefit, at Plaintiff's expense."

24   Compl. ¶¶ 107-08.  This is sufficient at the pleading stage.

_____

27   [5] At the April 23, 2025, case management conference, the Court announced that the motion to
dismiss the quasi-contract claim would be granted with leave to amend.  Upon further
28   consideration, the Court concludes that the motion to dismiss should be denied as to the quasi-
contract claim for the reasons stated herein.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

### 4. Negligent Misrepresentation (Count 7) and Intentional Misrepresentation and Omission (Count 8)

3      The Court DENIES the motion to dismiss Plaintiff's negligent misrepresentation (Count 7)

4  and intentional misrepresentation (Count 8) claims.  The elements of negligent misrepresentation

5  under California law are:  "(1) the misrepresentation of a past or existing material fact, (2) without

6  reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact

7  misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.'"  *Levit*

8  *v. Nature's Bakery, LLC*, No. 24-CV-02987-JST, 2025 WL 579192, at *8 (N.D. Cal. Feb. 21,

9  2025).  Intentional misrepresentation imposes the additional requirement of actual knowledge.  *Id.*

10  Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard where plaintiff

11  alleges fraud or mistake.

12      Defendant argues that Plaintiff's negligent misrepresentation claim must be dismissed

13  because Plaintiff fails to plausibly allege falsity and because Plaintiff cannot base her negligent

14  misrepresentation claim on an omission.  Although it is true that omissions "cannot give rise to

15  liability for negligent misrepresentation," Plaintiff's allegation that the "heart health" label claim

16  is *false* is sufficient for purposes of alleging negligent misrepresentation.  *Mitsui O.S.K. Lines, Ltd.*

17  *v. SeaMaster Logistics, Inc.*, 913 F. Supp. 2d 780, 789 (N.D. Cal. 2012), *aff'd in part, rev'd in*

18  *part*, 618 F. App'x 304 (9th Cir. 2015).

19      Defendant also argues that Plaintiff's intentional misrepresentation claim must be

20  dismissed because Plaintiff did not plausibly allege actual knowledge.  This argument is

21  unavailing.  Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's

22  mind may be alleged generally.").  Thus, Plaintiff has alleged all of the required elements for both

23  negligent and intentional misrepresentation.  Compl. ¶¶ 110-129.

### IV.    CONCLUSION

25      For the foregoing reasons, the Court ORDERS as follows:

26          1. Defendant's motion to dismiss is GRANTED as to Count 1 (various state consumer

27             protection acts) and Count 3 (CLRA).

28          2. Defendant's motion to dismiss is DENIED as to Count 2 (FAL), Count 4 (UCL),

1          Count 5 (breach of express warranty), Count 6 (quasi-contract), Count 7 (negligent

2          misrepresentation), and Count 8 (intentional misrepresentation).

3          Plaintiff may file an amended complaint within 14 days of the date of this Order.

4          **IT IS SO ORDERED.**

5  Dated: June 5, 2025

6

7

                                 Eumi K. Lee

8                               United States District Judge

United States District Court
Northern District of California

12