Zachary Arbitman*
Geroge A. Donnelly*
FELDMAN SHEPHERD WOHLGELERNTER
TANNER WEINSTOCK & DODIG, LLP
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
T: (215) 567-8300
F: (215) 567-8333
zarbitman@feldmanshepherd.com

*Attorneys for Plaintiffs*

*Admitted Pro Hac Vice

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAYNA CLARK and LYNN RZEPKA, individually and on behalf of all others similarly situated, | Case No. 5:24-cv-04058 |
| *Plaintiffs*, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| NORDIC NATURALS, INC., | |
| *Defendant.* | |

**Table of Contents**

I.      Introduction ................................................................................................. 3

II.     Parties ......................................................................................................... 4

III.    Jurisdiction and Venue. ............................................................................. 4

IV.     Facts. ........................................................................................................... 4

        A.     Fish oil capsules do not promote heart health. ............................. 4

        B.     Nordic Naturals sells over-the-counter fish oil capsules that purport to
               help "support a healthy heart." ..................................................... 6

        C.     Nordic Naturals' labeling is false and misleading to most customers. ................... 7

        D.     Nordic Naturals' fish oil capsules are wholly worthless. ........................... 8

        E.     Plaintiffs were misled and harmed by Nordic Naturals' misleading
               labeling. ....................................................................................... 9

        F.     No adequate remedy at law. ......................................................... 10

V.      Class action allegations. ........................................................................... 11

VI.     Claims. ...................................................................................................... 12

        First Cause of Action:  Violation of California's False Advertising Law Bus. &
               Prof. Code §§ 17500 & 17501 et. seq. ......................................... 12

        Second Cause of Action: Violation of California's Consumer Legal Remedies Act ....... 13

        Third Cause of Action: Violation of California's Unfair Competition Law .............. 15

        Fourth Cause of Action: Violation Of New York General Business Law § 349
               ("GBL") ...................................................................................... 17

        Fifth Cause of Action: Violation Of New York General Business Law § 350
               ("GBL") ...................................................................................... 18

        Sixth Cause of Action: Breach of Express Warranty ....................................... 19

        Seventh Cause of Action: Quasi-Contract ..................................................... 20

        Eighth Cause of Action: Negligent Misrepresentation and Omission ...................... 21

        Ninth Cause of Action: Intentional Misrepresentation and Omission ..................... 22

VII.    Relief. ........................................................................................................ 23

**VIII.    Demand for Jury Trial.** ......................................................................................... 23

## I.    Introduction

1.    Fish oil is one of the most popular dietary supplements.  About 19 million Americans take fish oil supplements, because they believe that the supplements will improve their cardiovascular health by helping to support a healthy heart.

2.    Many of the roughly 19 million Americans who supplement their diets with fish oil do so by taking fish oil capsules.  But fish oil capsules do not actually provide the heart health benefits that they claim to.

3.    Taking fish oil capsules does not support heart health.  Overwhelming evidence demonstrates that fish oil capsules do not promote a healthy heart.  Indeed, one way to determine whether fish oil capsules promote a healthy heart is to conduct trials pitting these capsules against placebos to see if there are any differences in heart-related benefits.  If there are no differences, this shows that fish oil capsules do not support a healthy heart.  Such trials have been performed multiple times.  And these "multiple randomized trials pitting fish oil against placebos show no evidence of heart-related benefits from fish oil capsules."[1]

4.    In fact, the most recent study on fish oil supplements found that taking these products can be harmful to heart health.

5.    Fish oil makers, however, continue to market these capsules as helping heart health. Scientists and consumer health advocates have warned that fish oil labels are misleading, and that consumers are wasting their money.[2]

6.    Defendant Nordic Naturals, Inc. ("Nordic Naturals" or "Defendant") makes, sells, and markets Nordic Naturals brand fish oil capsules ("Nordic Naturals Fish Oil Capsules" or "Products"). Each bottle claims that the capsules support heart health.

7.    Like other consumers, Plaintiffs Dayna Clark and Lynn Rzepka bought Nordic Naturals Fish Oil Capsules.  As described below, the label on the Products purchased by Plaintiffs state "Omega-3 for cognition, heart health, and immune support."  Plaintiffs read and relied on this statement that the Product promotes heart health and would not have purchased the Product if they had known that the Product does not promote—and can even harm—heart health.

---

[1] https://blogs.scientificamerican.com/observations/the-false-promise-of-fish-oil-capsules/
[2] https://www.health.harvard.edu/heart-health/the-false-promise-of-fish-oil-capsules

II.     **Parties**

     8.     Plaintiff Dayna Clark is domiciled in Los Angeles, California.

     9.     Plaintiff Lynn Rzepka is domiciled in Rochester, New York.

     10.     The proposed class includes citizens of every state.

     11.     Defendant Nordic Naturals, Inc. is a California corporation with its principal place of business at 111 Jennings Drive, Watsonville, CA 95076.

III.     **Jurisdiction and Venue.**

     12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

     13.     The Court has personal jurisdiction over Defendant because Defendant sold Nordic Naturals Fish Oil Capsules to consumers in California, including to Plaintiff Clark, and because Defendant is a California Corporation with its principal place of business in California.

     14.     Venue is proper under 28 U.S.C. § 1391(b)(1) & (2), because Defendant resides in this District (at its Watsonville headquarters) and because a substantial part of Defendant's conduct giving rise to the claims occurred in this District.

IV.     **Facts.**

     A.     **Fish oil capsules do not promote heart health.**

     15.     Consumers take fish oil capsules because of their purported health benefits.  Harvard Medical School describes it as follows:

> Millions of Americans — including one in five people over age 60 — take fish oil supplements…. Who can blame them? After all, the product labels say things like "promotes heart health" and "supports healthy cholesterol and blood pressure levels."[3]

     16.     The problem is, "there's no evidence that these amber capsules improve cardiovascular health—and they may even harm it."[4]  "Multiple randomized trials have compared

---

[3] https://www.health.harvard.edu/heart-health/the-false-promise-of-fish-oil-capsules
[4] *Id.*

First Amended Class Action Complaint          4          Case No. 5:24-cv-04058

fish oil supplements with placebo to look for cardiovascular benefit – and found nothing."[5] "The bottom line is there is no proof fish oil capsules improve your heart health." [6]

17.    Worse, multiple recent studies have found that fish oil supplements are *harmful* to heart health.

18.    "In the [peer-reviewed[7]] REDUCE-IT trial, 8179 participants were given 'omega-3' and they found that "there was a significant increase in risk of AF [atrial fibrillation] with omega-3 fatty acids."[8]

19.    "In the VITAL Rhythm Study…12,542 participants were randomized to receive a standard dose of omega-3 fatty acids, 840 mg/d (a combination of EPA and DHA) and 12,557 to receive placebo. After a median of 5.3 years, the incidence of AF was 7.2 per 1000 person-years in those taking omega-3 fatty acids vs 6.6 per 1000 person-years in those taking placebo."[9]

20.    And a study of over 400,000 participants concluded that "[r]egular use of fish oil supplements might be a risk factor for atrial fibrillation and stroke among the general population."[10]

21.    Yet, because these supplements are advertised as promoting heart health despite overwhelming evidence to the contrary, and because companies omit the fact that taking these supplements could harm heart health, millions of Americans regularly buy fish oil capsules, believing that taking the capsules will improve or promote their heart health.

---

[5] https://utswmed.org/medblog/fish-oil-pills-heart/; *see, e.g.*, https://www.nejm.org/doi/full/10.1056/nejmoa1811403; https://www.nejm.org/doi/full/10.1056/nejmoa1804989

[6] *Id.*

[7] The REDUCE-IT study was published in the New England Journal of Medicine. *See* https://www.nejm.org/about-nejm/about-nejm ("NEJM delivers high-quality, peer-reviewed research").

[8] Gregory Curfman, MD, *Omega-3 Fatty Acids and Atrial Fibrillation* (March 16, 2021). This article appears in JAMA, a peer-reviewed network of medical journals. *See* https://jamanetwork.com/journals/jama/pages/for-authors ("JAMA, published continuously since 1883, is an international peer-reviewed general medical journal. JAMA is a member of the JAMA Network, a consortium of peer-reviewed, general medical and specialty publications.").

[9] Albert CM, Cook NR, Pester, et al.  *Effect of marine omega-3 fatty acid and vitamin D supplementation on incident atrial fibrillation: a randomized clinical trial* (*VITAL Rhythm*) (JAMA, March 16, 2021).

[10] Chen et al., *Regular use of fish oil supplements and course of cardiovascular diseases: prospective cohort study* (BMJMED, 2024).

**B.     Nordic Naturals sells over-the-counter fish oil capsules that purport to help "support a healthy heart."**

22.     Nordic Naturals makes, markets, and sells Nordic Naturals fish oil supplements (the "Nordic Naturals Fish Oil Capsules" or "Products") in the United States. The Products are available nationwide.  Hundreds of thousands (or even millions) of U.S. consumers buy Nordic Naturals fish oil capsules.

23.     Nordic Naturals makes and sells several varieties of Products, including the following non-limiting examples: Nordic Naturals Ultimate Omega 1280 mg Omega-3, Ultimate Omega 2x 2150 mg Omega per 2 Soft Gels, Omega-3 690 mg Omega-3s per 2 Soft Gels, and Omega-3 1560 mg. Illustrative examples are shown below:







24.    Each product variant states that it supports heart health.  They do this by stating that the products are "for heart, brain, and immune health," "for cognition, heart health, and immune support," or similar phrases.

25.    Each of the Nordic Naturals Products are substantially similar.  They all advertise fish oil capsules and have a representation on the front of the bottle that the Product supports heart health.

**C.    Nordic Naturals' labeling is false and misleading to most customers.**

26.    By selling Products that purport to support heart health, Nordic Naturals is representing to customers that taking its fish oil capsule is beneficial to heart health.

27.     When a consumer picks up a bottle of Nordic Naturals Fish Oil Capsules, the consumer reasonably believes that taking the capsules will be beneficial to heart health.  No reasonable consumer reads the label and expects that the capsule has no effect on heart health. When the label says "for heart…health," consumers expect that to be accurate—that the product does help support a healthy heart. But the truth is, the product does not support heart health.  In this way, Nordic Naturals' affirmative representations are misleading to reasonable consumers.

28.     Also, because Nordic Naturals Fish Oil Capsules omit any warnings about the risks of fish oil supplements from their labels, no reasonable consumer would know from the labeling that taking fish oil supplements jeopardizes their heart health, including, for example, by increasing the risk of atrial fibrillation.

**D.     Nordic Naturals' fish oil capsules are wholly worthless.**

29.     The inaccurate labeling of Nordic Naturals Fish Oil Capsules is highly material to reasonable consumers.  The reason that consumers buy fish oil capsules is because they believe that they support heart health.  No reasonable consumer wants to buy and ingest a fish oil capsule that has no effect on heart health.

30.     Similarly, Nordic Naturals' false and misleading labeling drives the demand for its Fish Oil Capsules.  As explained above, the primary reason that people buy and ingest fish oil capsules is that they believe that it is beneficial to their heart.  If consumers knew the truth—that Nordic Naturals' Fish Oil Capsules do not have any benefit to heart health at all—the price of its products would crater.

31.     Worse, no consumer would pay the current market price for Nordic Naturals Fish Oil Capsules if Nordic Naturals did not omit information regarding the risks of fish oil supplements, specifically that they may be *harmful* to heart health by increasing the incidences of atrial fibrillation.

32.     The reason that consumers purchase Nordic Naturals Fish Oil Capsules is because they believe they promote heart health.  But without its heart benefits, and with the increased risk of atrial fibrillation, Nordic Naturals Fish Oil Capsules do not provide this benefit.  What reasonable person wants to pay for and ingest capsules at the current market price if the products do not improve heart health and, in fact, are harmful to heart health?   Thus, the economic injury here is the price

premium attributable to the false and misleading heart health statements.  Alternatively, because the false and misleading heart health statement is the sole reason that reasonable consumers purchase Nordic Naturals Fish Oil Capsules, the economic injury is the entire price of the Nordic Naturals Fish Oil Capsules that Plaintiffs and the class members purchased.

**E.      Plaintiffs were misled and harmed by Nordic Naturals' misleading labeling.**

33.     In or around spring of 2022, Dayna Clark purchased Nordic Naturals Fish Oil Capsules from Amazon.

34.     She purchased the Product regularly for years. The package prominently states that it helps support heart health.  Ms. Clark read and relied on this statement when purchasing the Product. She would not have purchased the Product at the price she paid if she had known that the Products have not actually been shown to promote heart health.

35.     The reason that Ms. Clark bought the Products is because she believed that the Products were good for her heart.  She read and relied on the statement on the label that the Products supports heart health. She would not have purchased the Products at the price she paid, if she knew that the Products did not actually support heart health. In fact, knowing the truth, the Products are worthless to her. The economic injury she suffered is the entire purchase price she paid for the Product, as it is worthless.

36.     Moreover, Ms. Clark was unaware that fish oil supplements, such as Nordic Naturals Fish Oil Capsules, actually *increased* her risk of atrial fibrillation, meaning that the Products were actually *harmful* to heart health.  She never would have paid the price she paid for the Products had this information not been omitted from the labels.

37.     Similarly, Lynn Rzepka  purchased the Products regularly for years, including in April of 2025 from Lori's Natural Foods Center in Rochester, NY.

38.     The package of the Product Ms. Rzepka purchased in April of 2025 prominently states that it helps support heart health. Ms. Rzepka read and relied on this statement when purchasing the

1  Products. She would not have purchased the Products at the price she paid if she had known that the

2  Products have not actually been shown to promote heart health.

3        39.    Moreover, Ms. Rzepka was unaware that fish oil supplements, such as Nordic Naturals

4  Fis Oil Capsules, actually *increased* her risk of atrial fibrillation, meaning that the Products were

5  actually *harmful* to heart health.  She never would have paid the price she paid for the Products had

6  this information not been omitted from the labels.

7       **F.**    **No adequate remedy at law.**

8        40.    Plaintiffs seek damages and, in the alternative, restitution.  Plaintiffs are permitted to

9  seek equitable remedies in the alternative because they have no adequate remedy at law.

10        41.    A legal remedy is not adequate if it is not as certain as an equitable remedy.  To obtain

11  a full refund as damages, Plaintiffs must show that the products they received have essentially no

12  market value.  In contrast, Plaintiffs can seek restitution without making this showing.  This is

13  because Plaintiffs purchased Products that they would not otherwise have purchased, but for Nordic

14  Naturals' misrepresentations.  Obtaining a full refund at law is less certain than obtaining a refund in

15  equity.

16        42.    Also, winning damages under the CLRA requires additional showings not required

17  under the UCL and FAL.  For example, to obtain damages under the CLRA, Plaintiff Clark must

18  prove that she complied with the CLRA's notice requirement.  No such requirements exist to obtain

19  restitution.  In addition, the CLRA prohibits only particular categories of deceptive conduct.  By

20  contrast, the UCL broadly prohibits "unfair" conduct and is thus broader.

21        43.    By the same token, Plaintiffs' common law claims require additional showings,

22  compared to the UCL, FAL, or unjust enrichment claims.  For example, to prevail on their breach of

23  warranty claim, Plaintiffs need to show that the statements they challenge constitute a warranty and

24  that the warranty was part of the basis of the bargain.  No such showings are required by the UCL or

25  FAL, or for an unjust enrichment theory.  In fact, the UCL and the FAL were enacted specifically to

26  create new claims and remedies not available at common law.  And unjust enrichment exists in part

27  because contractual claims are often more difficult to establish.  In this way, Plaintiff Clark's UCL

28  and FAL claims, and Plaintiffs' unjust enrichment claims, are more certain than their legal claims.

44.    Finally, the remedies at law available to Plaintiffs are not equally prompt or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

**V.    Class action allegations.**

45.    Plaintiffs bring the asserted claims on behalf of the proposed class of:

- Nationwide Class: all persons who, within the applicable statute of limitations period, purchased one or more Nordic Naturals Fish Oil Capsules.

- California Subclass: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Nordic Naturals Fish Oil Capsules.

- New York Subclass: all persons who, while in the state of New York and within the applicable statute of limitations period, purchased one or more Nordic Naturals Fish Oil Capsules.

46.    The following people are excluded from the class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity & Ascertainability***

47.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

48.    Class members can be identified through Defendant's sales records and public notice.

***Predominance of Common Questions***

49.    There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its labeling;

(2) whether Defendant violated consumer protection statutes;

(3) whether Defendant committed a breach of an express or implied warranty;

(4) damages needed to reasonably compensate Plaintiffs and the proposed class.

***Typicality & Adequacy***

50.    Plaintiffs' claims are typical of the proposed class.  Like the proposed class, Plaintiffs purchased the Nordic Naturals Fish Oil Capsules.  There are no conflicts of interest between Plaintiffs and the class.

***Superiority***

51.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VI.    Claims.**

**First Cause of Action:**

**Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq.**

**(By Plaintiff Clark and the California Subclass)**

52.    Plaintiff Clark (referred to as "Plaintiff" throughout this cause of action) incorporates each and every factual allegation set forth above.

53.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

54.    Defendant has violated Sections 17500 and 17501 of the Business and Professions Code.

55.    Defendant has violated, and continues to violate, Section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and subclass members.

56.    As alleged more fully above, Defendant falsely advertised its products by falsely representing that Nordic Naturals Fish Oil Capsules support heart health.

57.     Moreover, Defendant omitted crucial information from its label, failing to disclose that fish oil supplements may increase the risk of atrial fibrillation and *harm* heart health.

58.     Defendant's misrepresentations and omissions were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Products.  In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

59.     Defendant's misrepresentations and omission were a substantial factor in Plaintiff's purchase decision and the purchase decision of subclass members.

60.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Nordic Naturals Fish Oil Capsules if they had known that the Products do not actually promote heart health, and (b) they received products that were, in truth, worthless.

<u>**Second Cause of Action**</u>**:**

**Violation of California's Consumer Legal Remedies Act**

**(by Plaintiff Clark and the California Subclass)**

61.     Plaintiff Clark (referred to as "Plaintiff" throughout this cause of action) incorporates each and every factual allegation set forth above.

62.     Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

63.     Plaintiff and the subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

64.     Plaintiff and the subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

65.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

66.    As alleged more fully above, Defendant has violated the CLRA by falsely representing that Nordic Naturals Fish Oil Capsules support heart health.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were false and misleading.

67.    Moreover, Defendant omitted crucial information from its label, failing to disclose that fish oil supplements may increase the risk of atrial fibrillation and *harm* heart health.

68.    Defendant violated, and continues to violate, section 1770 of the California Civil Code.

69.    Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have.  Defendant represents that its Products have the characteristic of supporting heart health, when in reality they do not.

70.    Defendant violated, and continues to violate, section 1770(a)(7) of the California Civil Code by representing that Products offered for sale are of a particular standard, quality, or grade, if they are another.  Defendant represents that its Products meet the standard of supporting heart health, when in reality they do not.

71.    And Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code.  Defendant violated this by advertising its Products as being fit for their intended purpose of supporting heart health, when in fact Defendant does not intend to sell the Products as advertised.

72.    Defendant's false labeling was likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

73.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Products.  In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

74.    Defendant's misrepresentations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decision of subclass members.

75.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Nordic Naturals Fish Oil Capsules if they had known that the Products do not actually promote heart health, and (b) they received products that were, in truth, worthless.

76.    CLRA § 1782 NOTICE.  On June 12, 2024, a CLRA demand letter was sent to Defendant's California registered agent and California headquarters via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. Defendant failed to fully correct the problem, and thus Plaintiff and the California Subclass seek all monetary relief allowed under the CLRA.

77.    A CLRA venue declaration is attached.

### Third Cause of Action:

### Violation of California's Unfair Competition Law

### (by Plaintiff Clark and the California Subclass)

78.    Plaintiff Clark (referred to as "Plaintiff" throughout this cause of action) incorporates each and every factual allegation set forth above.

79.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

80.    Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

81.    Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.

82.    In addition, Nordic Naturals engaged in unlawful conduct by violating California Health & Safety Code § 109875 et seq. (the Sherman Food Drug and Cosmetic Law) which adopts and parallels federal FDCA requirements, including prohibitions on false and misleading labeling.

***The Fraudulent Prong***

83.    As alleged in detail above, Defendant's representations that its Products promote heart health, or that its Products improve cardiovascular outcomes, were false and misleading. Moreover, its omissions of information regarding the heart risks associated with taking its Products were false and misleading. Its labeling is likely to deceive, and did deceive, Plaintiff and other reasonable consumers.

### The Unfair Prong

84.    Defendant's conduct, as detailed above, also violated the "unfair" prong of the UCL.

85.    Defendant's conduct caused substantial injury to Plaintiff and subclass members. The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendant's conduct (which is none). Inaccurately labeled fish oil capsules have no public utility. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading labels only injure healthy competition and harm consumers.

86.    Plaintiff and the subclass could not have reasonably avoided this injury.  As alleged above, Defendant's labeling is false and misleading. Its labeling is likely to deceive, and did deceive reasonable consumers like Plaintiff.

87.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

88.    Defendant's conduct violated the public policy against false and misleading labels, which is tethered to the CLRA and the FAL, as well as California's Sherman Act.

* * *

89.    For all prongs, Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Products.  In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

90.    Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision and the purchase decision of subclass members.

91.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Nordic Naturals Fish Oil Capsules if they had known that the Products do not actually promote heart health, and (b) they received products that were, in truth, worthless.

**Fourth Cause of Action:**

**Violation Of New York General Business Law § 349 ("GBL")**

**(by Plaintiff Rzepka and the New York Subclass)**

92.     Plaintiff Rzepka (referred to as "Plaintiff" throughout this cause of action) incorporates each and every factual allegation set forth above.

93.     Plaintiff brings this claim herself and on behalf of the members of the New York Subclass.

94.     GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

95.     The conduct of Defendant alleged herein constitutes "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass seek monetary damages.

96.     Defendant misleadingly, inaccurately, and deceptively advertised and marketed its Products to consumers when it falsely represented that Nordic Naturals Fish Oil Capsules support heart health.

97.     Defendant's conduct was additionally misleading, inaccurate, and deceptive because Defendant omitted crucial information from its label, failing to disclose that fish oil supplements may increase the risk of atrial fibrillation and *harm* heart health.

98.     Defendant's improper consumer-oriented conduct is misleading in a material way in that it, inter alia, induced Plaintiff and the New York Subclass to purchase and pay a premium for the Products when they otherwise would not have.

99.     Plaintiff and the New York Subclass have been injured inasmuch as they paid a premium for Products that in fact did not support heart health and, in fact, may *harm* heart health due to the increased risk of atrial fibrillation. Had they known the truth about the Products, Plaintiff and

the New York Subclass would not have purchased at the price they paid them – e.g., they paid a price premium for the Products. Accordingly, Plaintiff and the New York Subclass received less than what they bargained and/or paid for.

100.    Defendant made its untrue and/or misleading statements and material omissions willfully, wantonly, and with reckless disregard for the truth.

101.    As a result of Defendant's unlawful deceptive acts and practices, Plaintiff and the New York Subclass are entitled to monetary, compensatory, statutory, treble, and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**Fifth Cause of Action:**

**Violation Of New York General Business Law § 350 ("GBL")**

**(by Plaintiff Rzepka and the New York Subclass)**

102.    Plaintiff Rzepka (referred to as "Plaintiff" throughout this cause of action) incorporates each and every factual allegation set forth above.

103.    Plaintiff brings this claim herself and on behalf of the members of the New York Subclass.

104.    GBL § 350 provides, in part, as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

105.    GBL § 350-a(1) provides, in part, as follows:

> The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.

106.    Defendant made material misrepresentations when it falsely represented that Nordic Naturals Fish Oil Capsules support heart health. Defendant also made material omissions when it omitted crucial information from its label, failing to disclose that fish oil supplements may increase the risk of atrial fibrillation and *harm* heart health. As a result of Defendant's material misrepresentations and omissions, reasonable consumers formed the mistaken belief that the Products supported heart health and did not include any risks of actually harming heart health.

107.    Defendant's advertising of the Products induced Plaintiff and the New York Subclass to buy Defendant's Products. Thus, Defendant made material representations and omissions about the Products.

108.    Plaintiff and the New York Subclass have been injured inasmuch as they paid a premium for Products that did not support heart health and, in fact, may harm heart health through the increased risk of atrial fibrillation Had they known the truth about the Products, Plaintiff and the New York Subclass would have paid significantly less for the Products – e.g., they paid a price premium. Accordingly, Plaintiff and the New York Subclass received less than what they bargained and/or paid for.

109.    Defendant made the foregoing untrue and/or misleading representations willfully, wantonly, and with reckless disregard for the truth.

110.    As a result of Defendant's unlawful deceptive acts and practices, Plaintiff and the New York Class are entitled to monetary, compensatory, statutory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## **Sixth Cause of Action**:

### **Breach of Express Warranty**

### **(by Plaintiffs and the Nationwide Class)**

111.    Plaintiffs incorporate each and every factual allegation set forth above.

112.    Plaintiffs bring this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff Clark brings this claim under California law for herself and members of the

California Subclass, and Plaintiff Rzepka brings this claim under New York law for herself and members of the New York Subclass.

113.    Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Nordic Naturals Fish Oil Capsules, issued material, written warranties by representing that the Products help support a healthy heart.  This was an affirmation of fact about the Products (i.e., a description of the capsules) and a promise relating to the goods.

114.    This warranty was part of the basis of the bargain and Plaintiffs and class members relied on this warranty.

115.    In fact, the Nordic Naturals Fish Oil Capsules do not conform to the above-referenced representation because, as alleged in detail above, Nordic Naturals' labeling is inaccurate and the Products have not been shown to support a healthy heart.  They do not promote heart health.  Thus, the warranty was breached.

116.    Plaintiff Clark provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on June 12, 2024.

117.    Plaintiffs and class members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing harm, because: (a) they would not have purchased Nordic Naturals Fish Oil Capsules if they had known that the Products have not actually been shown to improve cardiovascular outcomes or promote heart health or (b) they received products that were, in truth, worthless.

**Seventh Cause of Action:**

**Quasi-Contract**

**(by Plaintiffs and the Nationwide Class)**

118.    Plaintiffs incorporate each and every factual allegation set forth above.

119.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class. Common law quasi-contract claims are materially similar in all fifty states. Plaintiffs bring this cause of action in the alternative to her Breach of Express Warranty claim (Fifth Cause of Action) on behalf of themselves and the Nationwide Class.  In the alternative, Plaintiff Clark brings this claim

under California law on behalf of herself and the California Subclass, and Plaintiff Rzepka brings this claim under New York law on behalf of herself and the New York Subclass.

120.    As alleged in detail above, Defendant's false and misleading representations caused Plaintiffs and the class to purchase wholly worthless Products.

121.    In this way, Defendant received a direct and unjust benefit, at Plaintiffs' expense.

122.    Plaintiffs and the class seek restitution, and in the alternative, rescission.

### **Eighth Cause of Action:**

### **Negligent Misrepresentation and Omission**

### **(by Plaintiffs and the Nationwide Class)**

123.    Plaintiffs incorporate each and every factual allegation set forth above.

124.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class. In the alternative, Plaintiff Clark brings this claim under California law for herself and members of the California Subclass, and Plaintiff Rzepka brings this claim under New York law on behalf of herself and the New York Subclass.

125.    As alleged more fully above, Defendant made false representations to Plaintiffs and class members concerning its statements that the capsules support a healthy heart.

126.    Defendant also omitted crucial information from its label, failing to disclose that fish oil supplements may increase the risk of atrial fibrillation and *harm* heart health.

127.    These representations were false.

128.    When Defendant made these misrepresentations and omissions, it knew or should have known that the representations were false.  Defendant had no reasonable grounds for believing that these representations were true when made.

129.    Defendant intended that Plaintiffs and class members rely on these representations and omissions.

130.    In deciding to purchase Products from Defendant, Plaintiffs and the class reasonably relied on Defendant's representations and omissions to form the mistaken belief that the Products did promote heart health.

131.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Nordic Naturals Fish Oil Capsules.

132.    Defendant's misrepresentations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and class members.

133.    Plaintiffs and class members were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Nordic Naturals Fish Oil Capsules if they had known that the Products do not actually promote heart health, and (b) they received products that were, in truth, worthless.

**Ninth Cause of Action:**

**Intentional Misrepresentation and Omission**

**(by Plaintiffs and the Nationwide Class)**

134.    Plaintiffs incorporate each and every factual allegation set forth above.

135.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class. In the alternative, Plaintiff Clark brings this claim under California law for herself and members of the California Subclass, and Plaintiff Rzepka brings this claim under New York law on behalf of herself and the New York Subclass

136.    As alleged more fully above, Defendant made false representations to Plaintiffs and class members concerning its statements that the capsules support a healthy heart.

137.    Defendant omitted crucial information from its label, failing to disclose that fish oil supplements may increase the risk of atrial fibrillation and *harm* heart health.

138.    Defendant had a duty to disclose this information, as it involved the safety of consumers who took fish oil supplements.

139.    When Defendant made these misrepresentations and omissions, it knew that at the time that it made them that the representations were false and/or acted recklessly in making the misrepresentations and omissions.

140.    Defendant intended that Plaintiffs and class members rely on these representations and omissions and Plaintiffs and subclass members read and reasonably relied on them.

141.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations and omissions were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

142.    Defendant's misrepresentations and omissions were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and class members.

143.    Plaintiffs and class members were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased Nordic Naturals Fish Oil Capsules if they had known that the Products do not actually promote heart health and (b) they received products that were, in truth, worthless.

**VII.    Relief.**

144.    Plaintiffs seek the following relief for themselves and the proposed classes:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiffs and the proposed classes;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Rescission;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

**VIII.    Demand for Jury Trial.**

145.    Plaintiffs demand the right to a jury trial on all claims so triable.

1    Dated: June 20, 2025                    Respectfully submitted,

2                                            By: /s/ *Zachary Arbitman*

3                                            Zachary Arbitman*
4                                            zarbitman@feldmanshepherd.com

5                                            George A. Donnelly*
                                             gdonnelly@feldmanshepherd.com
6                                            FELDMAN SHEPHERD WOHLGELERNTER
7                                            TANNER WEINSTOCK & DODIG, LLP
                                             1845 Walnut Street, 21st Floor
8                                            Philadelphia, PA 19103
                                             T: (215) 567-8300
9                                            F: (215) 567-8333

10

11                                           Rick Lyon (Cal. Bar No. 229288)
12                                           rick@dovel.com
                                             Simon Franzini (Cal. Bar No. 287631)
13                                           simon@dovel.com
                                             DOVEL & LUNER, LLP
14                                           201 Santa Monica Blvd., Suite 600
15                                           Santa Monica, California 90401
                                             Telephone: (310) 656-7066
16                                           Facsimile: (310) 656-7069

17

18                                           *Admitted Pro Hac Vice

19                                           *Attorneys for Plaintiffs*

20

21

22

23

24

25

26

27

28

First Amended Class Action Complaint            24            Case No. 5:24-cv-04058